ORAL ARGUMENT 2/14/2024; DECIDED 5/3/2024

No. 23-1179

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

**ALON FARHY,**

**Petitioner-Appellee**

**v.**

**COMMISSIONER OF INTERNAL REVENUE,**

**Respondent-Appellant**

———————————————

**ON APPEAL FROM THE DECISION OF THE UNITED STATES
TAX COURT, CASE NO. 10647-21L**

———————————————

**PETITION FOR PANEL REHEARING AND**

**PETITION FOR REHEARING EN BANC**

———————————————

**EDWARD M. ROBBINS, JR., ESQ.**
**(DC Cir Bar # 52166)**
**Attorney for the Petitioner-Appellee**

**Hochman Salkin Toscher Perez, P.C.**
**Office: (310) 281-3247**
**Direct Fax: (310) 859-5129**
**Cell: (310) 801-4573**
**9100 Wilshire Boulevard, Suite 900W**
**Beverly Hills, California 90212**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. i

GLOSSARY OF ABBREVIATIONS ................................................. v

INTRODUCTION AND RULE 35(b) STATEMENT ........................ 1

STATEMENT OF THE CASE .......................................................... 2

REASONS FOR GRANTING THIS PETITION ............................... 4

    A. The Panel Erroneously Believes that a Taxpayer Can
    Challenge the Merits of a Penalty Assessment in a CDP
    Proceeding ............................................................................... 4

    B. The Panel Erroneously Believes That Petitioner's
    Theory Upsets Congressional Design for the Review
    of §6038(b) and §6038(c) ....................................................... 7

    C. The Panel Erroneously Believes That §6038 Expressly
    Authorizes Only the Commissioner Rather Than a
    District Court to Evaluate a Taxpayer's Defense to
    Penalties Imposed Under §6038 ............................................ 10

    D. Central to the Panel's Conclusions Is the Idea
    that a Referral to DOJ Is Contrary to Congressional
    Purposes .................................................................................. 11

    E. The Panel Erroneously Believes that the
    Subsection (c)(3) Coordination Provision
    Shows Congress Contemplated that §6038's
    Tandem Penalties Could Be Imposed at the Same Time ........ 12

    F. The Panel's Finding of Clear Congressional
    Purpose Behind Assessment Authority for §6038(b)
    Is Not Supported by the Record and,
    in All Events Is Insufficient .................................................. 13

CONCLUSION ...................................................................................... 15

CERTIFICATE OF COMPLIANCE.................................................... 16

CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES ...................................................................... 17

ADDENDUM .......................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Bell v. Commissioner*, 126 T.C. 356  (2006) ...............................................5

*Flora v. United States*, 362 U.S. 145  (1960) ...........................................7

*Flume v. Commissioner*, T.C. Memo 2017-21 .........................................6

*James v. Commissioner*, 850 F.3d 160 (4th Cir. 2017) ...........................6

*Keller Tank Services II, Inc. v. Commissioner*, 848 F.3d 1251

   (10th Cir. 2017)...................................................................................6

*Our Country Home Enterprises, Inc. v. Commissioner*,

   855 F.3d 773 (7th Cir 2017) ................................................................6

*Phila. & Reading Corp. v. United States,* 944 F.2d 1063

(3d Cir. 1991) ........................................................................................1

*Smith v Commissioner*, 133 Tax Court 424 (2009)..................................8

*West Virginia v. Environmental Protection Agency,*

   597 U.S. 697  (2022) ...........................................................................14

## Statutes

Code § 6038.......................................................2, 3, 4, 6, 7, 8, 9, 10, 11, 12

Code § 6038(b) .............................1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14

Code § 6038(c)................................................. 4, 6, 7, 8, 9, 11,12, 13, 14

Code § 6038(c)(3) ..................................................................8, 9, 12

Code § 6038(c)(4)(B) ...................................................... 4, 10, 11, 12

Code § 6038A(d) ...................................................................................3

Code § 6038B(c) ...................................................................................3

Code § 6038C(c) ...................................................................................3

Code § 6038D(d) ...................................................................................3

Code § 6039F(c) ...................................................................................3

Code §6201...........................................................................................3

Code § 6201(a) ................................................................................ 4, 5

Code § 6213 .........................................................................................8

Code § 6330(d)(1) ...............................................................................8

Code § 7803(a)(3)(D) ..........................................................................9

28 U.S.C. §2461(a) ........................................................................3, 6, 9

## Regulations

Treasury Regulations § 301.6320-1(e)(3) ..........................................6, 13

# GLOSSARY OF ABBREVIATIONS

| Term | Definition |
|---|---|
| Commissioner | Commissioner of Internal Revenue |
| Petitioner | Alon Farhy |
| Code | Internal Revenue Code (26 U.S.C.) |
| IRS | Internal Revenue Service |
| JA | Joint Appendix |
| DOJ | Department of Justice |

## INTRODUCTION AND RULE 35(b) STATEMENT

This case involves a question of exceptional importance to American tax administration. To understand the importance, one needs to understand the power the Commissioner seeks. *The Commissioner claims he may exercise his special collection powers against any person the Commissioner deems owes any "exaction" to the IRS, whether or not Congress has given him specific authority.*[1] The Panel held that the Commissioner, even without specific authority, has the legal power to assess a $400,000 Code §6038(b) penalty against Petitioner in order to exercise the Commissioner's unique "supercharged" collection powers to forcibly collect the §6038(b) foreign information penalties from Petitioner, all without judicial process.[2]  The Panel's theory is wrong and misses the entire point of Petitioner's action. Petitioner is seeking a pre-payment judicial forum to challenge the merits of the §6038(b)

---

[1] Commissioner's Opening Br. 14-25; Reply Br. 10.

[2] "[I]t is the assessment, and only the assessment, that sets in motion the collection powers of the IRS, powers that include the seizure of assets, the freezing of bank accounts and the creation of liens, all without judicial process." *Phila. & Reading Corp. v. United States*, 944 F.2d 1063, 1064 n.1 (3d Cir. 1991).

penalty and Congress provided one in the form of a collection suit brought by the government in federal court. However, the Panel's decision is driven by a wrong conclusion that Petitioner had an adequate pre-payment forum to challenge the merits of the §6038(b) penalty in a Tax Court appeal in a Collection Due Process ("CDP"). Petitioner agrees that he would not need to bring this action if he had a pre-payment judicial forum to challenge the merits of the §6038(b) penalty in an appeal to the Tax Court.

The parties and the Panel all agree that the Commissioner has no specific assessment authority over a §6038(b) penalty necessary to exercise his "supercharged" collection powers. Petitioner maintains that without an authorized assessment, the Commissioner must default to using the standard collection tools provided by Congress available to government agencies. The Tax Court agreed with Petitioner, and in a well reasoned opinion the Tax Court threw into question IRS penalty

collection procedures across five other foreign information penalties beyond Petitioner's §6038(b) penalties.[3]

## STATEMENT OF THE CASE

In this appeal, both the Commissioner and Petitioner raised their divergent views of the relationship between the assessment process and civil penalties under the Code. Petitioner argued that the existing statutory scheme does not allow assessment, thus foreclosing the Commissioner's exercise of his supercharged collection powers and identified the correct remedy for IRS collection: an existing civil action for the Commissioner to collect §6038(b) penalties. *See* 28 U.S.C. §2461(a). The Commissioner argued that §6201 was broad enough to allow the Commissioner to assess all "exactions" under the Code allowing the Commissioner's exercise of his supercharged collection powers without specific authority. In an unexpected approach to the case, the Panel declined to adopt either the Petitioner's or the

---

[3] See §§ 6038A(d), 6038B(c), 6038C(c), 6038D(d) and 6039F(c). The Farhy holding likely captures more penalties with no specific assessment authority.

Commissioner's broad views. Instead, the Panel took a narrow approach and found implied assessment authority within §6038 itself:

> We hold that the text, structure, and function of section 6038 demonstrate that Congress authorized assessment of penalties imposed under subsection (b). (Decision p.2).

## REASONS FOR GRANTING THIS PETITION

The Panel's foundational theories about the text, structure and function of §6038 leading to the Panel's holding are demonstrably wrong and based upon flawed conclusions of law. The Panel is wrong on its analysis of CDP, wrong on its analysis of parallel proceedings of §§6038(b) and (c), and wrong on its reading of §6038(c)(4)(B) as prohibiting the court from adjudicating reasonable cause.

## A. The Panel Erroneously Believes that a Taxpayer Can Challenge the Merits of a Penalty Assessment in a CDP Proceeding

The Panel noted (Decision p. 4) that "Congress provided for pre-collection review of assessments in two main circumstances." First is the deficiency process (Decision pp. 4-5) where a taxpayer has the right to a prepayment forum to challenge the merits a proposed deficiency and second is the Collection Due Process ("CDP") forum (Decision pp.5-6) where a taxpayer has the right to challenge the merits of an

assessment. Under both circumstances, according to the Panel, if a taxpayer cannot settle with the IRS, the taxpayer can appeal his case to the Tax Court for a judicial determination on the merits of the matter. (Decision p.15). If the Commissioner lacks assessment authority over the §6038(b) penalty, the Panel observed that no taxpayer can get a CDP hearing regarding the merits of the assessment. The Panel says that Petitioner's approach, if accepted, wrecks Congressional design and makes collection much more complicated for the Commissioner who must file a collection suit against the taxpayer in federal court to force collection. Thus, according to the Panel, it is fair to assume Congress intended assessment authority for the Commissioner, even if they did not say so. (Decision p.16).

The Panel's theory is wrong. Petitioner maintains that unlike a deficiency procedure, the taxpayer in a CDP case is statutorily precluded from litigating the merits of the liability in Tax Court. As explained in *Bell v. Commissioner*, 126 T.C. 356, 358 (2006), "[t]his statutory preclusion is triggered by the opportunity to contest the underlying liability, even if the opportunity is not pursued." The stock language in the IRS Collection Notices inviting the taxpayer to take the

collection issue to Appeals makes it *impossible* [4] to challenge the existence or amount of the liability in a Tax Court appeal from a CDP determination. The IRS and the courts interpret § 6330(c)(2)(B) and the Treasury regulations under §§ 6320 and 6330 restrictively. They take the position that a taxpayer does not have a right to dispute the existence or amount of a liability, if the taxpayer had a "prior opportunity" for a conference with Appeals, even if the taxpayer had no prior opportunity for Tax Court review of the liability and even if no subsequent Tax Court review of the Appeals determination is available.[5]

---

[4] *Flume v. Comm'r*, T.C. Memo 2017-21, notwithstanding. There, the Appeals Officer stipulated that the taxpayer never got any notice from the IRS. The Flume case is unique.

[5] *See James v. Comm'r*, 850 F.3d 160 (4th Cir. 2017); *Our Country Home Enterprises, Inc. v. Comm'r*, 855 F.3d 773 (7th Cir 2017); *Keller Tank Services II, Inc. v. Comm'r*, 848 F.3d 1251 (10th Cir. 2017); *Lewis v. Comm'r*, 128 T.C. 48, 61 (2007), and Treas. Reg. 301.6320-1(e)(3) Questions and Answers addresses matters considered at a CDP hearing. The regulation is primarily in Q&A format. Q-E2 asks the question: "When is a taxpayer entitled to challenge the existence or amount of the tax liability specified in the CDP notice?" A-E2 answers that question in a long paragraph that includes the following statement: "An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before

*Continued . . .*

Congress, in 28 U.S.C. § 2461(a), provided the government an adequate method to sue to collect outstanding liabilities. In the tax context, this method is highly beneficial to taxpayers in a non-deficiency setting, because they have an opportunity for judicial review of the merits of their liability in the federal court collection action brought by the government before they must pay the tax or penalty. The other remedy for taxpayers to obtain judicial review of the merits requires the taxpayer to fully pay the assessment and file a refund suit in the Court of Federal Claims or District Court.[6] The refund suit option is expensive and highly burdensome to taxpayers and well beyond the means of countless taxpayers.

**B. The Panel Erroneously Believes That Petitioner's Theory Upsets Congressional Design for the Review of §6038(b) and §6038(c)**

_____

or after the assessment of the liability. An opportunity for a conference with Appeals prior to the assessment of a tax subject to deficiency procedures is not a prior opportunity for this purpose." Examples of such a letter offering an Appeals Conference are at JA 34-36 and JA 51-53.

[6] _Flora v. United States_, 362 U.S. 145, 158 (1960).

The Panel again relies on its erroneous interpretation the CDP process to make another argument supporting Congressional intent to make §6038(b) penalties assessable. The Panel's opinion discusses the 1982 amendments to §6038(b), noting that Congress added the fixed-dollar penalty due to problems with the original penalty found within §6038, a percentage-based, assessable penalty imposed as a reduction of the taxpayer's foreign tax credit ("FTC"), which is now found in §6038(c). (Decision p. 14). The Commissioner has assessment authority subject to the Code's deficiency procedures for the §6038(c)/FTC reduction aspect of the penalty because it is calculated based on a tax credit. See *Smith v Commissioner*, 133 Tax Court 424 (2009). The Panel assumed that Congress wishing to streamline and improve the §6038 penalty created a scheme that would have the new §6038(b) penalty assessable and therefor subject to the CDP review while the old §6038(c)/FTC reduction penalty remained assessable through the Code's deficiency procedures. In either case, according to the Panel, a taxpayer can seek Tax Court *de novo* review of the merits of the assessment under § 6330(d)(1) for §6038(b) in a CDP proceeding, or under §6213 for §6038(c) in a deficiency proceeding. This parallel feature between (b)

and (c) indicates that Congress made the § 6038(b) penalty assessable, according to the Panel. (Decision, pp 14-15).

Again, according to the Panel, Petitioner's position which eliminates the assessment also eliminates a CDP hearing along with its Tax Court review and wrecks the entire parallel proceeding design of Congress. (Decision p. 18).

Petitioner maintains there is nothing to wreck here since the parallel proceedings do not exist. Since Congress enacted §6038(b) after it enacted §6038(c), one might assume that Congress wanted the two penalties to be litigated in the same proceeding. If so, one could theorize that Congress could have intended the §6038(b) penalty to be treated the same as the §6038(c) penalty, a deficiency penalty. Both would be processed, litigated, and assessed together in a deficiency procedure giving a taxpayer a prepayment opportunity to challenge the merits of the §6038(b) penalty in the Tax Court, just like the taxpayer has for the §6038(c) penalty. This hypothetical interpretation would provide finality and eliminate a computational problem identified by the Panel.

Rather than assuming what Congress might have intended, Petitioner's position correctly defaults to existing law. Congress, in 28

U.S.C. § 2461(a), provides the government an adequate method to sue to collect outstanding liabilities that protects both the Commissioner's right to collect and the taxpayer's rights, *i.e.* it gives the taxpayer a pre-payment judicial forum to raise defenses to the penalty assessment, *viz.*, District Court in a collection suit brought by DOJ to collect the penalty.[7]

## C. The Panel Erroneously Believes That §6038 Expressly Authorizes Only the Commissioner Rather Than a District Court to Evaluate a Taxpayer's Defense to Penalties Imposed Under §6038

Continuing with the analysis of §6038, the Panel noted that §6038's express authorization of the Commissioner rather than a district court to evaluate a taxpayer's defense to penalties imposed under the section reinforces the Panel's conclusion that Congress did not intend to have the merits of the §6038(b) penalty litigated in District Court, as urged by the Petitioner.[8] (Decision, pp. 16-19).

---

[7] See §7803(a)(3)(D): The taxpayer has the right to challenge the position of the IRS and be heard.

[8] Section 6038(c)(4) Special rules
(A)No taxes shall be reduced under this subsection more than once for the same failure.

*Continued . . .*

The Panel misread §6038(c)(4)(B) as an exclusive authorization to the Commissioner rather than a court to evaluate a taxpayer's reasonable cause defense to penalties imposed under §6038. Section 6038(c)(4)(B) gives the Commissioner no additional authority. The parenthetical "(as shown to the satisfaction of the Secretary)" applies to the date of the determination, not to determining reasonable cause. Properly read, if the Commissioner insists on asserting the penalty, §6038(c)(4)(B) merely sets time parameters. Regardless of the time parameters, the merits of any reasonable cause defense will ultimately be determined *de novo* by a court, along with any other defense, if the taxpayer goes to Tax Court (§6038(c)) or District Court (§6038(b)).

## D. Central to the Panel's Conclusions Is the Idea that a Referral to DOJ Is Contrary to Congressional Purposes (Decision, P.15).

Petitioner sees no clear congressional purpose to steer clear of a DOJ referral for collection. Petitioner acknowledged the obvious at oral argument that eliminating the Commissioner's "supercharged"

--------

(B)For purposes of this subsection and subsection (b), the time prescribed under paragraph (2) of subsection (a) to furnish information (and the beginning of the 90-day period after notice by the Secretary) shall be treated as being not earlier than the last day on which (as shown to the satisfaction of the Secretary) reasonable cause existed for failure to furnish such information.

collection powers and requiring the Commissioner to ask DOJ for judicial enforcement of a §6038(b) penalty is more expensive and time consuming for the Commissioner and DOJ. But protecting taxpayer rights is often expensive and time consuming. DOJ can accept or reject any suit request from the Commissioner, and it is reasonable that DOJ will pass on the smaller cases and concentrate on the larger ones, or not. DOJ has the authority to weigh the burdens against the benefits. But a DOJ policy decision does not change the law. Taxpayers, including Petitioner, should have the right to a pre-payment judicial hearing to challenge an assessment of the §6038(b) penalty.

## E. The Panel Erroneously Believes that the Subsection (c)(3) Coordination Provision Shows Congress Contemplated that §6038's Tandem Penalties Could Be Imposed at the Same Time

The Panel says that Congress contemplated that §6038's tandem penalties could be imposed simultaneously.[9] (Decision, p. 16). When they are, treating the subsection (b) penalties as non-assessable as

---

[9] (3) Coordination with subsection (b)

The amount of the reduction which (but for this paragraph) would be made under paragraph (1) with respect to any annual accounting period shall be reduced by the amount of the penalty imposed by subsection (b) with respect to such period.

urged by Petitioner, would make recovering subsection (c) penalties even more, rather than less, complicated, because the §6038(b) penalty amount is an offset to the §6038(c) amount. The Panel again brought up the §6038(c)(3) provision it wrongly read as an express authorization of the Commissioner rather than a district court to evaluate a taxpayer's defense to penalties imposed under the section. The Panel argued "Putting the IRS in charge of determining whether a taxpayer has demonstrated reasonable cause only makes sense in circumstances in which it is the IRS that assesses the penalty." "Where Congress requires the government to file a civil action to enforce a violation of the tax code, the court rather than the Service would decide whether the taxpayer proved that the defense excuses his or her violation." Thus, the Panel concludes, if the subsection (b) penalty were not assessable, there would be no post-assessment administrative process in which the taxpayer could make a reasonable cause showing to the Secretary. (Decision, p. 17).  This is wrong.

There is no exclusive authority for the Secretary to determine reasonable cause with finality. But under Petitioner's position, any taxpayer could raise any defense in a federal collection action brought

against him, including reasonable cause to the DOJ and the federal court.

**F. The Panel's Finding of Clear Congressional Purpose Behind Assessment Authority for §6038(b) (Decision, P. 15) Is Not Supported by the Record and, in All Events Is Insufficient**

The Panel's formula for evaluating the statutory scheme falls short of the required formula which requires "**clear congressional authorization**" to grant the Commissioner his supercharged collection powers to collect the §6038(b) penalty.   Under Supreme Court precedents, this case is a major questions case. The analysis is applicable to thousands of persons assessed the § 6038(b) penalty every year. See JA 174-175. Where, as here, the Commissioner is claiming a new expansive power to use his "supercharged" collection powers against anyone owing an exaction to the IRS where those powers are not specifically authorized in the Code, the proper application of the law by the Panel should be the standard outlined in *West Virginia v. Environmental Protection Agency*, 597 U.S. 697, 721-724 (2022). *West Virginia* deals with major questions: under the "major questions doctrine." In certain extraordinary cases involving grants of regulatory authority, in which the history and the breadth of the authority that

the agency has asserted and the economic and political significance of that assertion provide a reason to hesitate before concluding that Congress meant to confer such authority, both separation of powers principles and a practical understanding of legislative intent make the Supreme Court reluctant to read into an ambiguous statutory text the delegation claimed to be lurking there. To convince the Supreme Court otherwise, when an agency asserts highly consequential power beyond what Congress could reasonably be understood to have granted, something more than a merely plausible textual basis for the agency action is necessary, and the agency instead must point to "clear congressional authorization" for the power it claims. The Panel's analysis falls short of showing "clear congressional authorization."

## CONCLUSION

The petitions should be granted.

Respectfully submitted,
/s/ Edward M. Robbins, Jr.
Edward M. Robbins, Jr.
Attorney for the Petitioner-Appellee
Hochman, Salkin, Toscher, Perez, P.C.
Office: (310) 281-3247
Direct Fax: (310) 859-5129
Cell: (310) 801-4573
9100 Wilshire Blvd., Suite 900W
Beverly Hills, CA 90212

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements.

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X] this document contains 3199 words, or

[ ] this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, or

[ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

Dated June 4, 2024                    /s/ Edward M. Robbins, Jr.

                                      Edward M. Robbins, Jr.

16

## CERTIFICATE AS TO PARTIES, RULINGS,
## AND RELATED CASES

**A.    Parties, Intervenors, and Amici.**    The parties, intervenors, and amici appearing in the Tax Court and in this Court are Alon Farhy, the Petitioner, and the Commissioner of Internal Revenue, the Respondent.  There were no amici or intervenors appearing before the Tax Court, and there are no amici or intervenors who have appeared in this Court.

**B.    Rulings Under Review.**  The rulings under review are the Tax Court's decision by Judge L. Paige Marvel, entered on April 18, 2023, and the associated opinion, entered on April 3, 2023, and published at 160 T.C. No. 6.  (*See* JA240–54.)

**C.    Related Cases.**  This case was not previously before this Court or any other appellate court.  The Petitioner's Counsel is not aware of any related cases pending in this Court or in any other court.

## ADDENDUM

*Farhy v. Commissioner*, No. 23-1179 (D.C. Cir. 2024) attached.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 14, 2024      Decided May 3, 2024

No. 23-1179

ALON FARHY,
APPELLEE

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLANT

———

Appeal from the United States Tax Court

———

*Francesca Ugolini*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Jennifer M. Rubin* and *Robert J. Wille*, Attorneys.

*Edward M. Robbins* argued the cause and filed the brief for appellee.

Before: PILLARD and WILKINS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

2

PILLARD, *Circuit Judge*: Section 6038(a) of the Internal Revenue Code requires U.S. persons to file information reporting their control of any foreign business. Alon Farhy acknowledges that he violated that statutory obligation when he failed to report to the Internal Revenue Service his ownership of Belizean corporations and thus owes the United States government nearly $500,000 in penalties under section 6038(b), which imposes a fixed-dollar penalty for failure to comply with the requirements of section 6038(a). Farhy disputes only the method by which the Internal Revenue Service sought to collect that sum: assessing the penalties owed and notifying Farhy that it will levy his property if he fails to pay them. He contends that the IRS lacks statutory authority for its decades-long practice of assessing and administratively collecting section 6038(b) penalties. As he reads the statute, the government must sue him in federal district court to collect what he owes under section 6038(b). The Tax Court agreed, concluding that the Code does not empower the Service to assess and administratively collect section 6038(b) penalties. We hold that the text, structure, and function of section 6038 demonstrate that Congress authorized assessment of penalties imposed under subsection (b), and so reverse and remand to the Tax Court with instructions to enter decision in favor of the Commissioner.

## BACKGROUND

### A.

This case is a dispute over the process available to the IRS to enforce U.S. persons' obligations to file tax returns regarding their foreign interests. Can the penalty for failure to file be assessed by the Internal Revenue Service (IRS or Service), or must the Department of Justice sue and obtain a judgment from a federal district court before it can enforce the

3

penalty?  To appreciate what is at stake, it helps to understand that the Treasury Secretary's power of "assessment" is the cornerstone of the government's tax collection authority.  An "assessment" is the "official recording" of the amount a taxpayer owes the federal government.  *Polselli v. IRS*, 598 U.S. 432, 438 (2023); *see also* I.R.C. § 6203.  The federal tax system largely relies on each taxpayer's self-assessment, meaning the taxpayer's calculation of the amount she owes in a tax return filed with the IRS along with the indicated tax payment.  The Commissioner of the Service, to whom the Treasury Secretary's assessment authority is delegated, typically accepts the taxpayer's calculation and formally executes the assessment by "record[ing] the liability of the taxpayer" and crediting payments to that amount.  *United States v. Galletti*, 541 U.S. 114, 122 (2004); *accord Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 9 (2015).  When a taxpayer fails to file the requisite return or misstates the amount owed, the Commissioner determines the assessment:  It "calculates the proper amount of liability and records it in the Government's books."  *Galletti*, 541 U.S. at 122.

An assessment's unassuming form as a "bookkeeping notation," *Hibbs v. Winn*, 542 U.S. 88, 100 (2004) (quoting *Laing v. United States*, 423 U.S. 161, 170 n.13 (1976)), belies its importance.  "[I]t is the assessment, and only the assessment, that sets in motion the collection powers of the IRS, powers that include the seizure of assets, the freezing of bank accounts and the creation of liens, all without judicial process." *Phila. & Reading Corp. v. United States*, 944 F.2d 1063, 1064 n.1 (3d Cir. 1991).  Within 60 days of the IRS's assessment of a liability not already paid, the Service must "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof."  I.R.C. § 6303(a).  Then, if the amount remains unpaid, the IRS "can employ administrative enforcement methods to collect the tax,"

4

including liens and levies. *Galletti*, 541 U.S. at 122. An IRS assessment thus serves as "the trigger for levy and collection efforts." *Hibbs*, 542 U.S. at 102.

It is the rare federal tax that can only be recovered through a government-initiated lawsuit. Generally, "all taxes" imposed under the Internal Revenue Code (IRC or Code) are assessable. I.R.C. § 6201(a). That includes "assessable penalties," *id.*, such as those authorized by Chapter 68 of the Internal Revenue Code (titled "Additions to the Tax, Additional Amounts, and Assessable Penalties"), *see* I.R.C. Ch. 68; *see also id.* § 6665(a)(1). Chapter 68 penalties cover a range of conduct such as the failure to include required reportable transactions on returns, *id.* § 6707A, and the failure to file information with respect to certain foreign trusts, *id.* § 6677(a). But not every tax-related penalty is assessable. The IRC specifies, for example, that civil penalties for willful failure to pay excise taxes related to tobacco products are "to be recovered, with costs of suit, in a civil action." *Id.* § 5761(a).

Collection actions ensuing from IRS assessments operate largely in the administrative realm with limited opportunities for taxpayers to seek judicial review. Generally, taxpayers can obtain judicial review of an assessed liability by paying the amount in full and then filing a refund suit in federal district court. *See Flora v. United States*, 362 U.S. 145, 157-58 (1960). Recognizing that the pay-first, challenge-later model put judicial review out of reach of taxpayers who could not pay, Congress provided for pre-collection review of assessments in two main circumstances.

First, if an unpaid tax is a "deficiency," the IRS is required to provide the taxpayer an opportunity for judicial review before assessment. The Code defines a deficiency as "the amount by which the [income, gift, estate, or excise] tax

5

imposed . . . exceeds" the sum of "the amount shown as the tax by the taxpayer upon his return" plus any previous deficiency, less "the amount of rebates . . . made." I.R.C. § 6211(a). It thus "does not include all taxes owed by a taxpayer, but only those that are both owed and not reported." *Laing*, 423 U.S. at 173 n.18. Upon receipt of a notice of deficiency, a taxpayer generally has 90 days within which to petition the Tax Court for a redetermination of the deficiency. I.R.C. § 6213(a). Tax Court decisions are reviewable in federal courts of appeals. *Id.* § 7482(a)(1). The Service cannot assess the deficiency until the Tax Court's decision is final (or until expiration of the 90-day window to seek Tax Court review). *Id.* § 6213(a).

Many penalties, however, are not included in the statutory definition of "deficiency." Those exactions are not subject to deficiency procedures, so the IRS can assess them without awaiting judicial review. The IRS must notify the taxpayer of the amount due per its assessment and demand payment. I.R.C. § 6303(a). If the taxpayer fails to pay, the amount due "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." *Id.* § 6321. When the IRS files public notice of the federal tax lien on the taxpayer's property, it must again provide notice to the taxpayer. *Id.* § 6320(a). Similarly, if the IRS chooses to collect the liability by levying (*i.e.*, seizing) a taxpayer's property or rights to property, it must provide notice to the taxpayer. *Id.* § 6331(d).

Those lien and levy notices trigger the second main path to pre-collection judicial review. Upon notice of the IRS's filing of a lien or intention to levy property, the taxpayer is entitled to request a Collection Due Process (CDP) hearing, I.R.C. §§ 6320(b)(1), 6330(b)(1), the result of which the taxpayer may challenge in Tax Court, *id.* §§ 6320(c), 6330(d)(1). A CDP hearing proceeds before the IRS Office of

6

Appeals, *id.* §§ 6320(b)(1), 6330(b)(1), and lacks the typical hallmarks of a judicial hearing. There are no formal discovery procedures, and the taxpayer has no right to subpoena documents or witnesses. *See* Treas. Reg. § 301.6330-1 (2006). The hearing may occur through written or oral correspondence rather than a single in-person event. *Id.* "Indeed, far from constituting a formal hearing," a CDP hearing simply provides the taxpayer "an opportunity for an informal oral or written conversation with the IRS before he must pay a tax." *Our Country Home Enters., Inc. v. Comm'r*, 855 F.3d 773, 780 (7th Cir. 2017).

In a CDP hearing, the taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy," including "appropriate spousal defenses," "challenges to the appropriateness of collection actions," and "offers of collection alternatives" to facilitate his payment of the amount due. I.R.C. § 6330(c)(2)(A). If the taxpayer had no prior opportunity to dispute the tax liability—such as through deficiency proceedings—she may also challenge the "existence or amount of the underlying tax liability." *Id.* § 6330(c)(2)(B). The appeals officer conducting a CDP hearing must consider (1) the verification from the Service that the agency followed applicable laws and procedures, (2) any challenges raised by the taxpayer, and (3) whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *Id.* § 6330(c)(3). An Appeals Office decision is appealable to the Tax Court and, from there, to a federal court of appeals. *Id.* §§ 6330(d)(1), 7482(a)(1).

7

**B.**

At issue in this case is section 6038(a), which requires U.S. persons to file information returns reporting their control of any foreign business. It is one of dozens of provisions across the Internal Revenue Code that require taxpayers and other third parties to file certain information returns with the IRS or face penalties. Those required disclosures facilitate the IRS's verification of taxpayers' income and tax liabilities and assist the Service in detecting tax evasion. *See* Michael I. Saltzman & Leslie Book, IRS PRACTICE & PROCEDURE ¶ 7B.10. Many required informational filings relate to U.S. taxpayers' foreign interests: Activities including the receipt of large gifts from foreign persons, transfers of property to foreign businesses or persons, ownership of foreign financial assets, and creation of foreign trusts all trigger reporting requirements enforceable with civil penalties—even if no taxes are owed in connection with the requisite information. *See* I.R.C. §§ 6039F, 6038B, 6038D, 6048. Those requirements are designed to inform the Service of activities not subject to withholding that might generate tax revenue. They deter the use of international schemes to evade taxes, which are estimated to cost the U.S. government over $100 billion per year. *See* Jane G. Gravelle, Cong. Rsch. Serv., R40623, TAX HAVENS: INTERNATIONAL TAX AVOIDANCE AND EVASION 1, 21, 29-30 (2022).

When Congress initially enacted section 6038 in 1960, the sole penalty for the failure to file the information required by section 6038(a) was a 10 percent reduction of the violator's foreign tax credit. *See* Act of Sept. 14, 1960, Pub. L. No. 86-780, § 6(a), 74 Stat. 1010, 1014-16 (initially applying the reporting requirement only to domestic corporations that controlled foreign businesses); *see also* Revenue Act of 1962, Pub. L. No. 87-834, § 20(a), 76 Stat. 960, 1059-60 (amending section 6038 to apply to all U.S. persons with control over a

foreign business).   Now codified at subsection 6038(c), the foreign tax credit reduction is assessable by the Service.   Its assessability is intrinsic to how the subsection (c) penalty works:  By reducing a taxpayer's foreign tax credit, it increases the amount of tax he owes.   The penalty amount is thus necessarily reflected in a tax liability.   Taxes are categorically assessable under section 6201(a), which states that "[t]he Secretary is authorized and required to make . . . assessments of all taxes . . . ."   Indeed, for this reason, Farhy concedes that subsection (c) penalties are assessable.  *See* Oral Arg. Rec. 54:40-57.

In 1982, Congress amended section 6038 to bolster its enforcement.  *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, Title III, § 338, 96 Stat. 324, 631. "Despite complaints about inadequate reporting with respect to controlled foreign corporations," enforcement of the penalty for failure to file was persistently lax.  S. Rep. No. 97-494, vol. 1, at 299 (1982).  At the time, the foreign tax credit penalty was overly "complicated" and rarely imposed.  *Id*.  The penalty could be "unduly harsh" in response to minor violations, even as it was "of no use" to penalize violators who paid no foreign income tax, so were due no credit in the relevant year.  *Id.*

Congress responded by adding alongside subsection (c) a streamlined, uniform penalty for the same failure to file an informational return for a controlled foreign business: a flat $1,000 subsection (b) penalty, which it has since increased to $10,000.  *See* § 338, 96 Stat. at 631; Taxpayer Relief Act of 1997, Pub. L. No. 105-34, Title XI, § 1142(a), 111 Stat. 788, 982.   The subsection (b) penalty escalates by standard increments in response to persistent and knowing non-payment to a maximum total of $60,000 per year.   *See* I.R.C. § 6038(b)(1)-(b)(2).   And section 6038 coordinates the penalties imposed under subsections (b) and (c) to avoid

9

double-charging for the same violation. The amount of the subsection (c) penalty—the percentage-based reduction of the taxpayer's foreign tax credit—is itself offset by the amount of any fixed-dollar penalty authorized for the same period under subsection (b). *See id.* § 6038(c)(3).

**C.**

In 2004, U.S. permanent resident Alon Farhy developed a scheme to falsely underreport to the IRS his income from exercising certain stock options he received from his then-employer. Seeking to fabricate losses to reduce his U.S.-reportable income, he transferred more than $2 million to a sham foreign entity, which then transferred the funds to a bank account in the name of a Belize-based corporation Farhy created solely for that purpose. Farhy's scheme violated a variety of tax-related obligations beyond his duty to correctly report and pay the income tax he owed. Most relevant to this case, he also failed to report to the IRS his control of foreign financial accounts and foreign corporations he used in the scheme. In 2012, Farhy signed a non-prosecution agreement with the Tax Division of the U.S. Justice Department that immunized him from criminal prosecution for his failure to disclose his offshore accounts, provided he cooperated fully and truthfully with tax enforcement efforts and paid all applicable taxes, interest, and penalties.

But the non-prosecution agreement did not absolve Farhy of civil liabilities arising from tax code violations. On February 9, 2016, the IRS mailed Farhy notice that, between 2003 and 2010, he had failed to file forms to disclose his ownership of the Belizean corporations, as required by I.R.C. § 6038(a). More than two years later, when Farhy still had not filed the required forms, the IRS assessed initial and continuation penalties pursuant to I.R.C. § 6038(b), totaling

10

$60,000 per year of Farhy's non-compliance.  After the IRS sent Farhy notice of its intent to levy his property to collect the penalties owed, Farhy requested a CDP hearing.  The Appeals Office upheld the proposed levy of Farhy's property.

Farhy petitioned the Tax Court to invalidate the proposed levy, arguing only that the IRS was not authorized to assess penalties imposed under section 6038(b).  He claimed that the IRS was instead required to collect liabilities for such penalties through a civil action brought in federal district court under 28 U.S.C. § 2461(a).  Section 2461(a) establishes a general cause of action authorizing the government to sue to collect any civil penalty "prescribed for the violation of an Act of Congress."

The Tax Court granted Farhy's petition.  *See Farhy v. Comm'r*, Dkt. No. 10647-21L, 2023 WL 2752459, at *1 (T.C. Apr. 3, 2023).  It held that the IRS could not proceed with its proposed levy because the Secretary lacked statutory authority to assess the penalties.  *Id.* at *4.  The court concluded that, although Congress explicitly authorized assessment with respect to many penalty provisions across the tax code, it did not do so for section 6038(b).  *Id.* at *4-5.  That meant that the IRS could collect section 6038(b) penalties only through a civil suit filed by the U.S. Department of Justice, not through the administrative collection methods that it had used to enforce the penalties for more than forty years.  *Id.* at *5.  The government appeals.

## DISCUSSION

We review the Tax Court's legal rulings *de novo*.  *Lissack v. Comm'r*, 68 F.4th 1312, 1322 (D.C. Cir. 2023).  The only question on appeal is what mechanism Congress authorized for the Secretary of the Treasury to collect the fixed-dollar penalties authorized in I.R.C. § 6038(b) against a U.S. person

11

who fails to file the requisite information returns regarding foreign businesses under her control.

The text of section 6038 does not explicitly say whether the penalties imposed for violating section 6038(a) are assessable.  The parties principally argue from dueling presumptions that they contend generally apply to all penalties across the Internal Revenue Code.  Each claims support from a distinct reading of I.R.C. § 6201(a), which grants the Treasury Secretary broad authority to assess "all taxes (including interest, additional amounts, additions to the tax, and assessable penalties)."  Although none of the terms in section 6201(a)'s parenthetical are defined by the statute, the three categories of penalties listed after "interest" in the text correspond with—but are not necessarily limited to—the penalties that are set out in I.R.C. Subtitle F, Chapter 68, which is titled "Additions to the Tax, Additional Amounts, and Assessable Penalties."  All exactions in Chapter 68 are explicitly directed to "be assessed . . . in the same manner as taxes" by a subsection contained therein.  I.R.C. § 6665(a)(1).

In relying on section 6201(a) to argue that the disputed penalty is assessable, the Service emphasizes that section's text as well as "its role in the Code, its history, and the absurdities that would result from a narrower interpretation."  Reply Br. 2.  The Service starts by treating the exactions listed in the section 6201(a)'s "including" parenthetical as both non-exhaustive and, together with "all taxes," illustrative of every type of exaction the tax code authorizes.  It does not only claim that the term "assessable penalties" in the section 6201(a) parenthetical encompasses section 6038(b) penalties and others located "outside of Chapter 68."  IRS Br. 18.  Rather, the Service contends section 6201(a) is written to "cover the waterfront," Reply Br. 12, by making all exactions assessable as taxes unless the Code expressly requires a different process as to a

12

given exaction. The Service explains that section 6201(a)'s parenthetical lists "interest" and three broad types of penalties that appear in the Code. Because the word "including" precedes that list, the Service contends that list is illustrative rather than exhaustive, and was meant to encompass penalties generally, thereby comfortably including section 6038(b) penalties. It claims support for that position in the immediate predecessor to section 6201(a), which empowered and obligated the Commissioner "to make the inquiries, determinations, and *assessments of all taxes and penalties* imposed by this title, or accruing under any former internal revenue law, where such taxes have not been duly paid . . . ," I.R.C. § 3640 (1940) (emphasis added), which Congress recodified as 6201(a) with no apparent intention to circumscribe its applicability to all penalties.

For his part, Farhy interprets section 6201(a) to stand for the reverse presumption: He reads it to confirm that a penalty must be explicitly characterized as a "tax" or designated as "assessable" (or, presumably, an "additional amount" or "addition to the tax") elsewhere in the tax code for the Secretary to assess it per section 6201(a). Farhy reads section 6201(a)'s reference to "assessable penalties" to carry a negative implication that some penalties are *not* assessable, section 6038(b) penalties among them. More broadly, Farhy sketches out an exclusive schema of four overlapping ways the Code renders penalties assessable and insists penalties outside these categories are not assessable:

*First*, "[s]ome penalties are designated as taxes for assessment purposes," thereby authorizing their assessment under section 6201(a). Farhy Br. 7 (emphasis omitted). This category encompasses all penalties contained in Subtitle F, Chapter 68 of the IRC, which states that those penalties "shall

13

be assessed . . . in the same manner as taxes." I.R.C. § 6665(a)(1).

*Second*, "[s]ome penalties have a stand[-]alone assessment authority" in the section of the tax code imposing them, Farhy Br. 7 (emphasis omitted), because they describe a penalty that "shall be assessed," *see, e.g.*, I.R.C. § 527(j)(1), or provide, through cross-reference to Chapter 68, that a statutory violation authorized outside that Chapter is subject to a penalty provided therein. Farhy Br. 7-8.

*Third*, "[s]ome penalties have a group assessment authority," which occurs when the tax code "authorize[s] assessment of a penalty belonging in a designated group." *Id.* at 8 (emphasis omitted). Farhy again cites the penalties located in subchapter B of Chapter 68 (titled "Assessable Penalties"), which are explicitly directed to be "assessed and collected in the same manner as taxes," I.R.C. § 6671(a).

*Fourth*, "[s]ome penalties result from a designated procedure," such as deficiency proceedings. Farhy Br. 8-9 (emphasis omitted).

Because section 6038(b)'s penalties fall into none of those categories, Farhy contends, they are not "assessable penalties" and section 6201(a) cannot be read to encompass them and thereby make them so.

We need not embrace either party's tax code-wide default rule to resolve this case. We accordingly do not pass on those broader theories beyond explaining why Farhy's does not preclude assessment of section 6038(b) penalties. Instead, we conclude that a narrower set of inferences suffices to show that Congress intended to render those penalties assessable. Read in light of its text, structure, and function, section 6038 itself is best interpreted to render assessable the fixed-dollar monetary

14

penalties subsection (b) authorizes. As a result, the Commissioner's authority to assess all "assessable penalties" encompasses the authority to assess penalties imposed under section 6038(b).

**A.**

A close reading of section 6038 with an eye to the role of subsection (b) within it reveals that the Congress that amended the Code in 1982 intended the subsection (b) penalty to be assessable. For the same underlying failure to file, the section originally authorized only a percentage-based, assessable penalty imposed as a reduction of the taxpayer's foreign tax credit (now codified as subsection (c)). Two changes effected by the amendment are particularly relevant: First, in response to difficulties experienced in applying that original penalty, Congress added (as subsection (b)) a fixed-dollar penalty that could be more simply and consistently collected. Second, Congress required (in subsection (c)(3)) that the two penalties be coordinated. The subsection (b) penalty must be offset from any subsection (c) penalty in cases in which both penalties apply. All agree the IRS may assess subsection (c) penalties, and those two objectives of the amendment—that recovery of subsection (b) penalties be more streamlined than recovery of subsection (c) penalties, and that any subsection (c) penalty be reduced by the amount of the subsection (b) penalty—make plain that subsection (b) penalties must also be assessable. Section 6038's express authorization of the IRS rather than a district court to evaluate a taxpayer's defense to penalties imposed under the section reinforces that conclusion.

**1.**

Reading subsection (b) to require the government to sue taxpayers to collect its fixed-dollar penalty, as Farhy does, treats Congress as having enacted a supplemental penalty

15

process that is less streamlined, not more, than the preexisting collection process for subsection (c) penalties. Again, the IRS may assess and collect a subsection (c) penalty without entering a courtroom. All assessable exactions, including penalties under subsection (c), are subject to litigation only if a taxpayer opts for judicial review, such as by challenging a notice of deficiency in Tax Court pursuant to I.R.C. § 6213. If penalties imposed under subsection (b) are likewise assessable, as the government contends, the taxpayer may opt for judicial review of those penalties, too, by requesting a CDP hearing and, if dissatisfied with its result, obtaining Tax Court review under I.R.C. § 6330(d)(1).

If subsection (b) penalties are not assessable, the IRS cannot collect them at all without going first to court in each and every case. But it is unlikely the government will file lawsuits to recover from taxpayers the flat, $10,000 penalty authorized by subsection (b). Farhy concedes as much: As his counsel put it, the "Justice Department wouldn't touch that with a ten-foot pole." Oral Arg. Rec. 57:52-55. If subsection (b) penalties are that hard to recover, they may not be worth the candle. It would be "highly anomalous" for Congress to have responded to the identified problem of the underuse of subsection (c) penalties by promulgating a penalty that, while simpler to calculate, is much harder to enforce. IRS Br. 21; *see also* S. Rep. No. 97-494, vol. 1, at 299. Farhy has no persuasive rebuttal to that point. To the contrary, he suggests that Congress purposely made section 6038(b) penalties non-assessable—and therefore largely ornamental—because it wanted to "withhold the IRS's super-charged collection powers" that flow from assessment. Oral Arg. Rec. 44:32-42. That view is contradicted by the clear congressional purpose behind the enactment of subsection (b).

16

Further, the subsection (c)(3) coordination provision shows Congress contemplated that section 6038's tandem penalties could be imposed at the same time. When they are, treating the subsection (b) penalties as non-assessable would make recovering subsection (c) penalties even more, rather than less, complicated. That is because the amount by which the reduction of the taxpayer's foreign tax credit, calculated under section 6038(c)(1), should be offset per section 6038(c)(3) is set by subsection (b). It is thus fair to assume that Congress intended the subsection (b) penalty to be routinely assessed, but credited back in cases in which the Service also imposes a subsection (c) penalty. Under Farhy's reading, however, the subsection (b) penalty must await a federal court's entry of judgment. If both subsection (b) and subsection (c) penalties were sought in the same case, the Secretary would be forced to wait for the conclusion of the federal court action regarding the subsection (b) penalty before she could coordinate the subsection (b) and subsection (c) penalty amounts and then collect the correct subsection (c) penalty amount. To agree with that reading, we would have to conclude that, in enacting subsection (b), Congress not only failed in its avowed quest to streamline, but also counterproductively threw sand in the gears of section 6038's existing enforcement scheme.

**2.**

Another feature of the process contemplated in section 6038 drives home that Congress expected the IRS, not a federal district court, to assess subsection (b) penalties. Consider what section 6038 says about the determination of specified defenses to the penalties the section imposes. As with many penalties imposed across the tax code, penalties under sections 6038(b) and (c) are subject to a "reasonable cause" affirmative defense, which courts describe as requiring the taxpayer to establish that

17

she "exercised ordinary business care and prudence" in attempting to adhere to her reporting obligations. *Flume v. Comm'r*, Dkt. No. 15772-14L, 2017 WL 394541, at \*5 (T.C. Jan. 30, 2017) (quoting *United States v. Boyle*, 469 U.S. 241, 246 (1985)). And section 6038 empowers the Service—not a court—to grant or deny that defense. *See* I.R.C. § 6038(c)(4)(B) (requiring reasonable cause to be "shown to the satisfaction of the Secretary").

Various IRC provisions excuse taxpayers for conduct otherwise subject to penalty based on a showing of "reasonable cause" for the noncompliance. If a taxpayer experienced a debilitating health condition constituting "reasonable cause" severe enough to interfere with her ability to file, for example, the IRS could not impose penalties unless the taxpayer's non-compliance persisted once she had recovered. *See, e.g.*, *Remisovsky v. Comm'r*, Dkt. No. 11945-20L, 2022 WL 3755390, at \*3-4 (T.C. Aug. 30, 2022). Putting the IRS in charge of determining whether a taxpayer has demonstrated reasonable cause only makes sense in circumstances in which it is the IRS that assesses the penalty. Where Congress requires the government to file a civil action to enforce a violation of the tax code, the court rather than the Service would decide whether the taxpayer proved that the defense excuses his or her violation.

Section 6038(c)(4)(B) expressly treats the reasonable cause showing for failure to file the relevant informational returns as within the purview of the Service. A taxpayer facing a subsection (b) penalty may submit to the IRS a written statement attesting that reasonable cause excused the filing failure, *see* Treas. Reg. § 1.6038-2(k)(3)(ii), and "provide a reasonable cause narrative during the CDP hearing" to an IRS employee acting with delegated authority from the Secretary, who makes a determination that can be appealed to the Tax

18

Court. *Flume*, 2017 WL 394541, at *6; *see* Treas. Reg. § 1.6038-2(k)(3)(ii). The 1982 Senate Report confirms that the reasonable-cause defense to subsection (b) penalties was intended to operate "[a]s under present law," meaning as under subsection (c); in either case, a showing made "to the satisfaction of the Secretary" would mean that "no penalty is due." S. Rep. No. 97-494, vol. 1, at 299.

If the subsection (b) penalty were not assessable, there would be no post-assessment administrative process in which the taxpayer could make a reasonable cause showing to the Secretary. On Farhy's reading, it would be for the district court rather than the Secretary to determine the taxpayer's liability for the penalty, subject to any reasonable-cause defense. It is hard to see what purpose would be served by the statutory requirement that the taxpayer's reasonable-cause defense be "shown to the satisfaction of the Secretary" if the claim subject to that defense must be decided in the first instance by a district court judge. I.R.C. § 6038(c)(4)(B).

Congress's specification that the Secretary, not the district court, evaluates taxpayers' assertions of reasonable-cause defenses to section 6038(b) penalties dovetails neatly with section 6201(a). In addition to empowering and requiring the Secretary to make assessments, section 6201(a) calls on the Secretary to "make the inquiries [and] determinations . . . of all taxes (including . . . assessable penalties)." As just discussed, one familiar set of secretarial "determinations" is whether a taxpayer has "shown to the satisfaction of the Secretary" that he had reasonable cause for failing to file required information, per I.R.C. § 6038(c)(4)(B). Farhy's insistence that section 6201(a) is inapplicable to section 6038(b) penalties would leave the Secretary without power under section 6201(a) regarding not only the assessment of section 6038(b) penalties, but "inquiries" and "determinations" into them as well. Section

19

6038's express contemplation that the Secretary will determine the reasonable-cause defense—whether penalty is sought under subsection (b) or (c)—supports treating both section 6038 penalties as assessable. The unworkability of rendering inquiry-and-determination authority not equally applicable to the penalties under those tandem subsections bolsters our conclusion that Congress intended both penalties to be assessable within the meaning of section 6201(a).

**3.**

Finally, the potential bifurcation of the review of penalties arising from the same violation underscores the anomalous implications of interpreting subsection (c), but not subsection (b), penalties to be assessable. Farhy's reading would create parallel and substantively overlapping judicial tracks for determination of twinned penalties for the same noncompliance: federal district court for the subsection (b) penalties, and Tax Court for the subsection (c) penalties. Interjecting a federal district court into a penalty process already subject to IRS administrative determinations reviewable by the Tax Court introduces an inexplicable asymmetry and potential for inconsistent doctrinal development. If both penalties were sought in the same case, it could even generate duplicative court proceedings on common issues. Both courts might have to decide, for example, whether the taxpayer who failed to disclose his controlling stake of the foreign businesses owned those businesses during the years for which the IRS seeks penalties, and review or decide whether the taxpayer had a reasonable-cause defense to the section 6038(a) violation.

Treating the subsection (b) penalty as non-assessable could also raise potential preclusion issues when both penalties are imposed for the same conduct. Provided other

20

requirements of collateral estoppel are met, the first-issued judgment as to a common issue between the parallel proceedings would have binding effect on the other court. *See, e.g.*, *Burrows v. United States*, 945 F.2d 408 (9th Cir. 1991) (unpublished table decision). Reading section 6038 to call for dual-track subsection (b) and (c) judicial proceedings could stir concerns about gamesmanship, incentivizing parties to push forward more quickly in the forum they perceive to be more favorable.

We decline to adopt a reading of section 6038(b) that attributes to Congress the intent to respond to the problem it identifies in a manner that is not only ineffective, but counterproductive.

**B.**

It is hardly anomalous that section 6038(b) penalties are assessable even though the text of section 6038 does not explicitly label them as such. Farhy's contention that Congress may only authorize assessment of a penalty by using certain formulations that he has identified overlooks the realities of the Internal Revenue Code—an ever-changing statutory patchwork that contains nearly 10,000 code sections. *See* Nat'l Taxpayer Advocate, Annual Report to Congress 45 (2022). Scattered across the tax code are more than one hundred penalties applicable to diverse forms of noncompliance and set forth in varied ways. Discerning the operation of each penalty is necessarily a context-dependent exercise.

Farhy argues that, because the Internal Revenue Code has "explicitly authorized assessment regarding myriad penalty provisions in the Code" in the four ways he deems to be exclusive, Congress's putative failure to fit section 6038(b) penalties into his framework means they are non-assessable.

21

Farhy Br. 9; *see Farhy*, 2023 WL 2752459, at *4.  But Farhy is incorrect that Congress can only render a penalty assessable through the standardized methods he identifies.

Nothing establishes Farhy's categories as exhaustive of the ways the Internal Revenue Code designates penalties as assessable.  Consider I.R.C. § 6038D, which requires U.S. persons to report to the IRS any interest exceeding $50,000 in certain foreign financial assets, such as financial accounts and foreign entities.  Much like section 6038(b), section 6038D(d) imposes a fixed-dollar penalty of $10,000 for violating the statutory obligation.  I.R.C. § 6038D(d)(1).  And, like section 6038(b) penalties, penalties under section 6038D(d) escalate in response to continuing failure to comply after notice from the IRS.  *Id.* § 6038D(d)(2).  The penalty imposed under section 6038D(d) lacks all of the explicit indications of assessability Farhy insists are needed:  Section 6038D is not within Chapter 68, all of which the Code explicitly renders assessable; it does not identify the penalty imposed therein as assessable; and it does not say its penalty corresponds to any penalties listed in Chapter 68.  Consequently, Farhy urges that this penalty, too, is not assessable.  *See* Farhy Br. 10 n.1.

But section 6038D(e) spells out a presumption, binding on the Commissioner "for purposes of *assessing* the penalties imposed under this section," that foreign financial assets not disclosed or sufficiently described meet the threshold amount required for the penalties to apply.  I.R.C. § 6038D(e) (emphasis added).  We do not rule on the point, as it is not before us, but specifying a default rule for the Commissioner to apply in penalty assessment would seem to make it quite plausible that section 6038D(d)'s penalties are assessable.

Section 45(b)(7)(B) provides another example of a provision that Farhy categorizes as not assessable within his

22

schema, even though its text suggests that the penalty it authorizes is assessable.  *See* Farhy Br. 10 n.1.  That section imposes penalties for the failure to pay required wages to laborers who construct or repair renewable energy facilities. I.R.C. § 45(b)(7)(B)(i)(II).  It does not appear in or cross-reference Chapter 68, or directly state that the penalty is assessable, as Farhy insists is required.  It states only that deficiency proceedings "shall not apply with respect to *the assessment* or collection of any penalty imposed by this paragraph." *Id.* § 45(b)(7)(B)(ii) (emphasis added).  Again, we make no holding on the point, but the implication is clear that, although the penalties imposed are not deficiencies, the Commissioner can summarily assess them.   And Farhy ultimately concedes as much.  Oral Arg. Rec. 49:10-20.

Thus, Congress renders penalties assessable in more ways than Farhy's proposed schema contemplates:  The absence of the penalty from Chapter 68 and the lack of either a cross-reference to Chapter 68 or explicit language directing that the penalty "shall be assessed" is not determinative.  Congress can make a penalty assessable by implication, and it did so here.

\*\*\*

We conclude, based on the statute's text, structure, and function, that penalties imposed under section 6038(b), like the related penalties under section 6038(c), are assessable.  This conclusion is buttressed by more than forty years of congressional acquiescence to the IRS's practice of assessing section 6038(b) penalties.  "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *Commodity Futures Trading*

23

*Comm'n v. Shor*, 478 U.S. 833, 846 (1986) (quoting *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 274-75 (1974)); *see also Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164, 182-85 (D.C. Cir. 2022).   Since adding subsection (b) in 1982, Congress has amended section 6038 seven times; each time, it has left undisturbed the IRS's practice of assessing and administratively collecting penalties imposed under section 6038(b).

For the foregoing reasons, we reverse the judgment of the Tax Court and remand with instructions to enter decision in favor of the Commissioner.

*So ordered.*